Marshall, C. J.
The first of these cases was tried before the mayor of the village of Struthers in Mahoning county, and the second was first tried in the municipal court of the city of Youngstown. Both were liquor cases, in violation of ordinances of the village of Struthers and the city of Youngstown, respectively. The defendant was found guilty in each case, and error was prosecuted to the court of common pleas of Mahoning county, where the judgments were reversed. Error was thereupon prosecuted to the Court of Appeals, where the judgments of the court of common pleas were affirmed. The two causes were tried together in the court of common pleas, and in the Court of Appeals, and have been jointly heard in this court. The sole *265 question presented for determination in the review proceeding's concerns the validity of the ordinances of the village of Struthers and the city of Youngstown, upon which the convictions were based. That major question has two elements: (1) Whether municipalities in Ohio have any right to enact or enforce ordinances prohibiting the manufacture and sale of intoxicating liquor as a beverage; (2) whether, if municipalities possess such power, the ordinances in question are in conflict with general laws and therefore void.
Upon the first of these primary questions, it is contended that Section 9, Article XV, of the Ohio Constitution, only confers the power of legislation upon the General Assembly. That section reads, in part, as follows:
“The sale and manufacture for sale of intoxicating liquors as a beverage are hereby prohibited. The General Assembly shall enact laws to make this provision effective.”
If this were the only constitutional provision, the question would be one of great difficulty. But it is not the only provision. Prior to that amendment the license amendment was in full force, but by the schedule to Section 9, Article XV, the license amendment was repealed. The limitations imposed upon the Legislature and the councils of cities and villages by the license amendment have become inoperative. We therefore look to the other provisions of the Constitution to determine what power cities and villages have to legislate in matters of local self-government. Section 3, Article XVIII, provides:
“Municipalities shall have authority to exercise all powers of local self-government and to adopt and *266 enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
By virtue of the authority thus conferred upon municipalities, it has been held by this court in Stange v. City of Cleveland, 94 Ohio St., 377, 114 N. E., 261, that a municipality may adopt regulations pertaining to hours and conditions of labor. In City of Fremont v. Keating, 96 Ohio St., 468, 118 N. E., 114, this court affirmed the right of a city to regulate the speed of motor vehicles, notwithstanding Section 12604, General Code, had already made provisions covering the same general subject. It was'pointed out in that ease that a different penalty was prescribed by the ordinance than that prescribed by the statutes of the state, and that fact was held to be unimportant and not to create a conflict between the statute and the ordinance. In Greenburg v. City of Cleveland, 98 Ohio St., 282, 120 N. E., 829, this court affirmed the right of a municipality to enact an ordinance punishing larceny. In the case of City of East Liverpool v. Dawson, 101 Ohio St., 527, 130 N. E., 936, this court held valid an ordinance “declaring it unlawful to beep, store, or use intoxicating liquors in certain places.”
It is the spirit and the pronouncement of the decisions in all the foregoing cases that by virtue of Section 3, Article XVIII, of the Ohio Constitution, as amended in 1912, municipalities of the state have police power directly conferred by the people in all matters of local self-government, and that upon all of the subjects covered in those cases municipal legislation was a valid exercise of the local police power. The question presented in the instant case has *267 been more nearly met in the recent case of Heppel v. City of Columbus, 106 Ohio St., 107, 140 N. E., 169, decided by this court December 12, 1922. The syllabus of that case is as follows:
“By virtue of authority conferred upon municipalities by Section 3, Article XVIII, of the Ohio Constitution, to adopt and enforce within their limits such local police regulations as are not in conflict with general laws, municipalities may enact and enforce ordinances, the provisions of which are not inconsistent with the general laws of the state, prohibiting the manufacture, possession or sale of intoxicating liquor for beverage purposes and the keeping of a place therein where intoxicating liquors are manufactured, sold, furnished, etc., for beverage purposes.”
It will be seen therefore that, unless there is some conflict between the ordinance and the state law which would invalidate the ordinance, this court has repeatedly answered the present inquiry. Let us therefore look to the second question presented, and inquire whether there is such conflict as would render these ordinances invalid.
The two ordinances, and the Crabbe and Miller Acts, are all quite lengthy, and it would prolong this opinion to an unreasonable length to quote the ordinances and the acts and make comparisons to show the differences between them. It is sufficient to say that a careful examination of all of them discloses that certain acts are punishable by the Crabbe and Miller Acts which are not covered by the ordinances, or either of them, and that, on the other hand, the ordinances penalize certain acts which are not dedared to be illegal under the state laws. In gen *268 eral, the state laws provide much more severe penalties, although, in at least one particular, greater severity is prescribed by one of the ordinances. It must therefore be determined whether these differences constitute such a conflict as to bring the ordinances within the inhibition of the latter part of Section 3, Article XVIII.
It is manifest that this branch of the ease must turn largely upon the range of meaning to be given the word “conflict,” and whether differences, where no antagonism appears, will render the ordinances invalid. The Century Dictionary has defined “conflict” as follows:
“Discord of action, feeling or effect; antagonism, as of interests or principles; counteraction, as of causes, laws or agencies of any kind; opposing action or tendency; opposition; collision.”
Measured by the foregoing definition, it is difficult to observe a real conflict. No real conflict can exist unless the ordinance declares something to be right which the state law declares to be wrong, or vice [versa. There can be no conflict unless one authority grants a permit or license to do an act which is forbidden or prohibited by the other. No act is either expressly or inferentially permitted or licensed by either of the ordinances, or the statutes. On the contrary, all acts referred to are forbidden and penalties imposed for violations. It is not contended that any of the provisions of the ordinances or statutes are violative of either the state or federal Constitutions pertaining to prohibition, but, on the contrary, it is conceded that they are in harmony with the constitutional provisions, and designed to promote the enforcement of the constitutional *269 amendments. In one of the ordinances a slightly heavier penalty is provided for a second offense, hut it has been repeatedly held in many of the states, including the state of Ohio, that this is no valid objection. Rossberg v. State, 111 Md., 394, 74 Atl., 581, 134 Am. St. Rep., 626; State, ex rel. City of Butte, v. District Court, 37 Mont., 202, 95 Pac., 841; Ex parte Ramsey (D. C.), 265 Fed., 950; Town of Van Buren v. Wells, 53 Ark., 368, 14 S. W., 38; State v. Ludwig, 21 Minn., 202; City of Quincy v. O’Brien, 24 Ill. App., 591; Baldwin v. Murphy, 82 Ill., 485; and City of Lorain v. Maraldi, 19 Ohio Cir. Ct. (N. S.), 58, affirmed by Supreme Court, without opinion., Maraldi v. City of Lorain, 81 Ohio St., 539, 91 N. E., 1134.
It has repeatedly been held that the punishment of an act defined as a crime under a state law does not preclude further punishment as a, misdemeanor under a municipal ordinance. This is the clear pronouncement of this court in the case of Koch v. State, 53 Ohio St., 433, 41 N. E., 689, and the same rule has been declared by the courts of other states in the following cases: Town of Van Buren v. Wells, 53 Ark., 368, 14 S. W., 38, 22 Am. St. Rep., 214; Town of Bloomfield v. Trimble, 54 Iowa, 399, 6 N. W., 586, 37 Am. Rep., 212; State v. Lee, 29 Minn., 445, 13 N. W., 913; and Robbins v. People, 95 Ill., 175. All the foregoing authorities relate to double jeopardy as between a state and municipalities within the state.
The Supreme Court of the United States has dealt with the subject of double jeopardy between the United States and states of the Union. The earliest case on this subject is Fox v. Ohio, 5 How. (46 U. S.), 410, 12 L. Ed., 213. Fox had been convicted *270 by the Ohio courts for uttering a counterfeit coin, and it was contended that, inasmuch as the federal law punishes the same offense, the defendant might be twice placed in jeopardy. Upon review of that case by the Supreme Court of the United States, this objection was held not tenable. Thereafter, through a long line of decisions, the same principle has been upheld by the Supreme Court of the United States, as shown in the following cases: United States v. Marigold, 9 How., 560, 13 L. Ed., 257; Moore, Exr., v. Illinois, 14 How., 13, 14 L. Ed., 306; U. S. v. Cruikshank, 92 U. S., 542, 23 L. Ed., 588; Southern Ry. Co. v. Rd. Comm. of Ind., 236 U. S., 439, 35 Sup. Ct., 304, 59 L. Ed., 661; Gilbert v. State of Minnesota, 254 U. S., 325, 41 Sup. Ct., 125, 65 L. Ed., 287, and other cases.
The latest discussion of that principle in the Supreme Court of the United States was by Chief Justice Taft, in United States v. Lanza, 260 U. S., 377, 43 Sup. Ct., 141, 67 L. Ed., 161, decided December 11, 1922, which case relates to a prosecution under the Yolstead Act (41 Stat., 305). The defendants had previously been convicted of violations of the state enforcement laws of the state of Washington, and thereafter prosecutions were begun for the same identical offenses in the District Court of the United States for the Western District of Washington. In all the foregoing cases the courts have recognized that different jurisdictions may enact laws and ordinances for the preservation of law and order in their respective jurisdictions, and that if any question of double jeopardy is presented, it is a legislative problem—that is to say, Congress could in its wisdom bar a prosecution by federal courts for any act *271 where punishment had already been imposed by state' laws, and any state might similarly provide that a prosecution would be barred by the courts of such state when punishment has been imposed by any municipality, or by the federal courts, for the same offense.
In the absence of any such provision in either the laws or the Constitution of this state, and desiring that the judgment of this court on this subject shall be in harmony with the judgments of the courts of other states and of the United States Supreme Court, and, further, finding no conflict between the ordinances of the village of Struthers and city of Youngstown and the state enforcement acts, we have reached the conclusion that the judgments in both cases should be reversed, and the judgment of the trial court in each case, respectively, affirmed.

Judgments reversed.

Wanamaker, Robinson, Jones, Matthias, Day and Allbn, JJ., concur.