**248 P.2d 210**

**GRANITO v. GRACE, County Clerk.**

**No. 5568.**

Supreme Court of New Mexico.

Sept. 25, 1952.

Frank Andrews, Santa Fe, for appellant.

Joe L. Martinez, Atty. Gen., Frank B. Zinn, Ass't Atty. Gen., Hilario Rubio, Ass't Atty. Gen., for appellee.

SADLER, Justice.

We are asked to hold that the amendment of 1941 Comp. § 56–817, by L.1949, c. 123, § 10, brought about such a change in the meaning of the section as originally enacted and construed by us in State ex rel. Van Schoyck v. Board of County Commissioners, 46 N.M. 472, 131 P.2d 278, that following the amendment a vacancy in the list of candidates of a political party entitled to representation on the official ballot necessary to fill all the offices provided for by law at the ensuing general election may now be filled by the appropriate political party committee of the state or county, as the case may be, even though there was no nomination in the primary election for the office as to which the vacancy exists.

The facts are simple and not in dispute. One Jose J. Roybal duly filed with the county clerk of Santa Fe County his declaration of candidacy for the office of County School Superintendent on the democratic ticket and paid the filing fee demanded.

Subsequently, it developed that he was not eligible to become a candidate. Accordingly, he was notified by the county clerk, the respondent, that he was not eligible and that his declaration of candidacy theretofore filed had been voided. As a result of the foregoing facts, no other person having filed a declaration of candidacy for the office in question, the name of no candidate for the office appeared on the democratic ballot in the primary election held on May 6, 1952.

Thereafter, on May 29, 1952, the Democratic County Executive Committee designated the relator, J. M. Granito, to fill the vacancy on the ballot as the democratic candidate for the office mentioned and filed his name as such candidate with the respondent. The relator was promptly notified by respondent that he would decline to place his name on the ballot for use in the general election because the vacancy in question occurred prior and not subsequent to the primary election. The trial court having found the facts as related in a mandamus action instituted by the relator in the district court of Santa Fe County concluded he was not entitled to relief and that an alternative writ theretofore issued by the court should be quashed. Judgment was entered in conformity with the findings and conclusions adopted by the court from which the relator prosecutes this appeal.

In the Van Schoyck case, supra, we construed the Primary Election Code, 1941 Comp. §§ 56–801 to 56–827, as a whole, of which the section in question is a part, and made two clear-cut decisions with respect to it. The first one was that the write-in method of nominating candidates for public office was unavailable, either to a political party participating in the primary, or to any member thereof seeking to place himself on the official ballot as his party's nominee in the general election. Our second holding in the case was that under the provisions of the act the vacancy referred to in § 56–817, L. 1938, Sp.Sess., c. 2, § 17 was one occurring subsequent to the primary election and that the political party committee had no power to fill a vacancy existing at the time of the primary election due to the fact that there was no nomination for a given office in such election.

As already indicated, the relator disagrees with the second holding. He asks us to overrule the Van Schoyck case as unsound in so far as it confines the power to fill vacancies to such as occur subsequent to the primary election. If not so persuaded, he then seeks to have us declare the amendment accomplished by L.1949, c. 123, § 10, so changes the meaning of the statute as to permit now what was denied by us under the statute as it stood originally, namely, the power to fill a vacancy existing at time of the primary election be-

cause there was no nomination made by a political party of a candidate for a particular office. We have carefully considered the arguments presented and think the trial court correctly ruled against the relator as to both contentions. In our opinion, the Van Schoyck case was correctly decided under the language of the questioned section as it stood at that time and we are not persuaded that the language of the amendment shows a legislative intent to accomplish a change in the respect urged upon us. We shall now give our reasons for so concluding.

The portion of the Primary Election Code construed by us in the Van Schoyck case which primarily controlled our decision in the matter of filling vacancies was section 17 of Chapter 2, Laws of 1938, Special Session, 1941 Comp. § 56–817. The amendment was incident to the enactment of the so-called Pre-Primary Election Law in which some six sections of the Primary Election Code, of which the original section 17 was one, were amended in order to coordinate the provisions of the former act with the later one. Section 17 of the act as it originally appeared and as amended may be contrasted by quoting the amended section with the changes italicized. So quoted the amended section reads as follows:

"Section 10. That Section 56–817 of the New Mexico Statutes, 1941 Annotated, the same being Section 17 of

Chapter 2 of the New Mexico Session Laws of 1938, be and the same hereby is amended to read as follows:

"Section 56–817. Vacancy *existing after primary—Method of filing.*—If after a primary election for any cause, *including cases where there was no candidate for nomination after designation by convention,* in the primary election, there shall be a vacancy in the list of candidates of a political party entitled to representation on the official ballot necessary to fill all the offices provided for by law at the ensuing general election, such vacancy may be filled by the political party committee of the state or county, as the case may be, by filing the name of its candidate for such office within *twenty-five (25)* days after such primary with the officer with whom nominating petitions are to be filed, and when so filed, the name shall be placed upon the official ballot for the ensuing general election as the party's candidate for such office. Any vacancy thereafter occurring may be filled in like manner by the party committee at any time before the official ballots are printed. If a vacancy occurs after the ballots are printed, the name of the person so selected as a candidate to fill such vacancy (may) be placed on said ballot by pasting the printed name of such candidate so se-lected and filed over the name of the candidate whose vacancy he fills on the official ballot." L.1949, c. 123, § 10.

The proper interpretation of the statute as amended must be reached by viewing the background of the amendment. The Primary Election Code had been enacted in 1938 at a special session of the legislature. L.1938, Sp.Sess., c. 2. The Van Schoyck case was decided in 1942, on the eve of the general election in November of that year. Actually, we announced our decision from the bench, following a conference subsequent to oral argument and filed the formal opinion in the case a few days after the election. The operation of the direct primary following enactment in 1938 had been observed in five elections, 1940 through 1948, and some dissatisfaction with the system having developed the legislature in 1949 enacted what became known as the Pre-Primary Convention Law. L.1949, c. 123. However, referendum petitions to repeal the law were filed under Const. Art. 4, § 1, sufficient in number of signers to suspend its operation and to call for a vote on whether it should be repealed at the ensuing general election in November, 1950. The vote on the matter at the ensuing election failed to show sufficient support to repeal the new act. Hence, it went into effect in time to be applicable to the 1952 general election.

656

With this history of the enactment in mind it is difficult to see in the amendment any purpose in the legislative mind other than to render certain that provisions of this section should apply to vacancies existing after the primary election, whether the nominee as to whom the vacancy exists by reason of death, withdrawal or otherwise, shall have emerged as a candidate through designation by a convention or by the petition method which as to legislative, district, county and precinct offices was continued as a system of nominating candidates by the Pre-Primary Law, L.1949, c. 123, §§ 5 and 7, 1941 Comp. §§ 56–807, 56–809. Incidentally, it was restored as a permissible, though greatly restricted, method of nominating state and congressional candidates by L.1951, c. 180, § 8, 1941 Comp. § 56–802e, the restriction applying to legislative, district, county and precinct offices as well.

The legislature must have sensed the danger of having it said that L.1938, Sp. Sess., c. 2, § 17, 1941 Comp. § 56–817 was confined in its application to vacancies in nominations of the only kind permissible at the time the Primary Election Code was enacted. Accordingly, to establish indubitably that such was not the legislative intent and in the very act adopting the pre-primary convention system of designating candidates, it included this as the very last of some six amendments, being section 10, all calculated to bring various phases of the direct primary law into coordination with the pre-primary law then being enacted.

This conclusion seems inescapable when we remember that the same reasons which brought us to the conclusion reached in the Van Schoyck case are equally applicable to the section in question as it stands after the amendment. There we pointed out that to adopt the construction contended for by counsel in that case and renewed here would be to throw open to renewed practice some of the very abuses adoption of the direct primary was designed to prevent. We there spoke on this phase of the matter, as follows [46 N.M. 472, 131 P. 2d 285]:

"We may notice judicially that one of the chief reasons for adopting the primary system of making nominations was to take the matter out of the hands of party conventions and committees and give it directly into the hands of the qualified electors of the parties participating therein. This recognized aim could easily be circumvented and defeated if relator's construction of the statute in this connection should be adopted. A political party whose leaders were so disposed might easily discourage the filing of candidacies in the primary as to all or the more important offices. Having thus occasioned a 'vacancy', the appropriate party committee, following the

primary, could meet and select candidates to oppose those already selected by the other party or parties in the primary. Knowing who the opposing candidates were, the committee selection could be made after taking into consideration every factor, geographical and otherwise, calculated to poll the largest vote for such candidate in the general election."

The observations quoted are just as pertinent in the present appeal as they were to the situation existing in the Van Schoyck case. Moreover, in amending the section in substantially the same language as that contained in the original enactment, it amounts to a continuation of the same statute and not a new enactment. State v. Thompson, 37 N.M. 229, 20 P.2d 1030; and Dietz v. Hughes, 39 N.M. 349, 47 P.2d 417. Furthermore, in view of our construction of the statute in the Van Schoyck case and its substantial re-enactment in an amended form, the legislature may be regarded as adopting the construction we gave it. 50 Am.Jur. 461, § 442 under "Statutes." Northern Pac. Ry. Co. v. Dunham, 108 Mont. 338, 90 P.2d 506; Annotation 65 L.Ed. 106.

Counsel for the relator places great stress on the fact that in the amendment the legislature substituted the word "existing" for the word "occurring" in the descriptive title supplied by the code compilers. Neither the word "occurring" nor the descriptive title itself was supplied by the legislature in the first instance. Both were the work of the code compilers. Furthermore, we could not permit this one circumstance (and it supplies the strongest argument relator has advanced) to accomplish so fundamental a change in the statute as that here claimed for it. The purpose of the legislature in the amendment, as we have explained it hereinabove, seems so obvious that to endeavor to employ substitution of the word "existing" for the word "occurring," the latter being no part of the act itself, would be to amend the statute ourselves.

Finally, it is said the 20-day limitation (25 in the amendment) contained in the statute as originally enacted "is a statute of limitation and of necessity can only apply to vacancies arising prior to the primary election." Counsel admits this point was not urged in the Van Schoyck case, and not even suggested. Nor is any persuasive reason now presented as to why the 25-day limit (20 under the original act) can apply "only to vacancies occurring prior to the primary election." Indeed, if as we have held in the Van Schoyck case and correctly, we think, that the vacancy referred to in the statute is one in a nomination made in the primary election, then the 20 or 25-day limitation prescribed in the statute, contrary to re-

lator's contention that it "can only apply to vacancies arising prior to the primary election" is a limitation that can only apply to vacancies arising subsequent thereto.

It is to be remembered that in the enactment of the Primary Election Code, the time for the primary election was set for the second Tuesday in September of each even numbered year. In view of the fact that the general election would follow on the Tuesday after the first Monday in November, Const. Art. 20, § 6, scarcely two months later, the importance of prompt action in filling any vacancy in the list of candidates of a political party entitled to representation on the official ballot necessary to fill all the offices provided by law at the ensuing general election would seem obvious.

The statue at best, either before or after amendment, may not be pointed to as a model of draftsmanship. Notwithstanding its shortcomings, however, we do not feel that our construction of it in the Van Schoyck case falls short of arriving at the true intent of the legislature as determined from the language employed. Likewise we think we have correctly stated herein the purpose of the amendment added by L. 1949, c. 123, § 10. So for the reasons here and in our opinion in the Van Schoyck case, stated, we think the case below was correctly determined and that the judgment reviewed should be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and COORS, JJ., concur.